IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN A. STOUT<br><br>    Plaintiff,<br><br>    v.<br><br>HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No.: 11-6186 CW (JSC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES (Dkt. No. 22)** |

Now pending before the Court is Plaintiff's motion to compel discovery in a disability-benefits action governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. Plaintiff Kathleen Stout moves to compel the production of documents and interrogatory responses from Defendant Hartford Life and Accident Insurance Company ("Defendant"). Plaintiff also requests leave to depose six witnesses employed at or affiliated with Defendant. After careful consideration of the briefing submitted by the parties, and with the benefit of oral argument on September 20, 2012, the Court GRANTS in part and DENIES in part Plaintiff's motion to compel discovery as outlined below.

## BACKGROUND

Plaintiff was employed by Amazon.com and insured under a group long-term disability policy governed by ERISA and underwritten and insured by Defendant. Plaintiff began

receiving long-term benefits under the policy on September 23, 2009. This action arises from Defendants' termination of her benefits on January 18, 2011. Plaintiff seeks to recover $6,500 per month in back benefits and to receive benefits going forward.

## DISCUSSION

Where an ERISA plan offers an administrator discretion to "to determine eligibility for benefits," a court will review a plan administrator's denial of benefits for abuse of discretion. *Stephan v. Unum Life Ins. Co. of Am.*, 2012 WL 3983767 *4 (9th Cir. Sept. 12, 2012) (internal quotations marks and citation omitted). "[T]he degree of skepticism with which [the court] regard[s] a plan administrator's decision when determining whether the administrator abused its discretion varies based upon the extent to which the decision appears to have been affected by a conflict of interest." *Id.* at *9. "While not altering the standard of review itself, the existence of a conflict of interest is a factor to be considered in determining whether a plan administrator has abused its discretion. The weight of this factor depends upon the likelihood that the conflict impacted the administrator's decisionmaking." *Id.; see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008) ("[A] conflict should be weighed as a factor in determining whether there is an abuse of discretion.") (internal quotation marks and citation omitted).

An inherent structural conflict of interest exists when "the same entity that funds an ERISA benefits plan also evaluates claims." *Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d 623, 630 (9th Cir. 2009); *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965-66 (9th Cir. 2006) (noting that an administrator balances a duty to ensure "that those who deserve benefits receive them" against "an incentive to pay as little in benefits as possible"). It is well-established that a district court may permit discovery regarding the structural conflict of interest of an ERISA plan administrator and its affect, if any, on its decision in the case. *See Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 n.15 (9th Cir. 2008) ("Whether to permit discovery into the nature, extent, and effect of the Plan's structural conflict of interest is also a matter within the district court's discretion."); *Abatie*, 458 F.3d at 970 ("The district court may, in its discretion, consider evidence outside the administrative

record to decide the nature, extent, and effect on the decision-making process of any conflict of interest.").

It is undisputed that an inherent conflict of interest exists here: Hartford both decides who gets benefits and pays them. And the District Court has already determined that Plaintiff gets some discovery of the effect of Hartford's conflict on its benefit decision. (Dkt. No. 20 at 4.) The question for this Court is the extent of that discovery. In answering that question, the Court must ask more than whether the information sought is relevant; instead, it should limit the discovery of otherwise relevant information if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii).

### A. Operational Procedures and Guidelines

Hartford's disability-claims manuals, including its Special Investigations Unit (SIU) manual, may evidence how Hartford's structural conflict of interest affects its disability determinations. *See, e.g., Zewdu v. Citigroup Long Term Disability Plan,* 264 F.R.D. 622, 628 (N.D. Cal. 2010) (ordering production of a claims manual where the plan beneficiary alleged a structural conflict of interest affected the claims denial). Should Defendant's claims manual reveal, for example, that claims above a certain cost should be referred to the Special Investigations Unit (SIU), then this information may be probative of the effect of the conflict of interest and therefore the skepticism which the district court will apply to Hartford's reasoning for its decision. The Court therefore orders production in its entirety of the LTD and SIU manuals for the years 2009, 2010, and 2011. If the manuals are electronic, the parties should meet and confer on the version(s) to be produced.

### B. Performance Evaluations

Performance reviews may reveal a structural incentive for individual claims adjustors to deny disability claims. *See, e.g., Knopp v. Life Ins. Co. of N. Am.*, 2009 WL 5215395 *4 (N.D. Cal. Dec. 28, 2009)(ordering discovery of performance evaluations of reviewing doctors and third party vendors); *Zewdu*, 264 F.R.D. at 627-29 (ordering production of performance

1  reviews of medical employees to determine whether employees "were rewarded for or
2  encouraged or pressured to deny claims" (citing *Gessling v. Group Long Term Disability Plan*,
3  639 F.Supp.2d 947 (S.D.Ind.2009))). The Court is also cognizant of the employees' privacy
4  interests. Accordingly, the Court orders Defendant to produce for an *in camera* review the
5  performance evaluations for the initial claims adjustor, the claims reviewer, and any other
6  Hartford manager or supervisor with decision-making authority as to Plaintiff's disability
7  claim. The Court will then determine the documents' relevance and whether they should be
8  produced to Plaintiff.

### C. Defendant's Relationship with UDC or MES

Defendant "has offered to produce (subject to a protective order) copies of its contract with the vendors UDC and MES" and "to disclose the amount of compensation paid to the vendors and the three doctors identified" from 2007 to 2011. (*Id.* at 28 n.8). The Court accordingly orders Defendant to produce its contracts with UDC and MES and to provide the amount of compensation provided to UDC and MES and the three doctors for those years. The Court declines to order production of the promotional materials in light of the other documents ordered produced and as their potential relevance is outweighed by the burden of production.

### D. Evaluations and Audits of UDC and MES

Audits or evaluations of UDC and MES, either performed by Defendant or provided to Defendant by UDC or MES, may evidence the effect of the structural conflict of interest. For instance, such reports may reveal that these vendors produce medical reports that consistently find no disability, evidence which Plaintiff will argue suggests a "parsimonious claims-granting history." *See Abatie*, 458 F.3d at 968. The Court therefore compels production of any audits or evaluations or reports of or by UDC and MES in Defendant's possession for the years 2009, 2010, and 2011.

### E. Success Rates of Peer-Reviewed Disability Claims

Plaintiff's request for "information and documents regarding the number of Hartford claims involving a peer medical review and Plaintiff's condition of Sjogren's Syndrome, as well

4

as the number of claims rejected and accepted involving a peer medical review and/or Sjogren's Syndrome" (Dkt. No. 22 at 18) is denied without prejudice. Defendant has offered evidence of a substantial burden of production; namely that to provide Plaintiff with the number of claims denied because of peer medical review would involve a manual review of each claim file and thus be unreasonably costly and time consuming.  At oral argument the Court explored whether Defendant's electronic records would allow Defendant to provide Plaintiff with the number of claims sent for peer medical review to UDC and MES and the number of those claims ultimately denied. In the end, the parties agreed that after Defendant produces the documents it has agreed to produce, as well as those ordered by the Court, they will meet and confer on what additional information, if any, Defendant shall produce in response to these interrogatories.

### F.  Every Peer Report Written by Dr. Jay, Dr. Peck, and Dr. Ricker

The Court declines to order Defendant to produce "every peer review report prepared by Drs. Jay, Peck, and Ricker for Hartford and/or the third party vendors MES and UDC." (Dkt. No. 22 at 18.) Their relevance to the effect of Hartford's structural conflict of interest is minimal given that there is nothing in the record that suggests Hartford selected these physicians; rather, Hartford selected UDC and MES and these vendors in turn selected these physicians. What is most relevant, then, is the relationship between Hartford and UDC and MES and the overall results Hartford gets from these vendors. Plaintiff's reliance on *Caplan v. CNA Financial Corp.,* 544 F.Supp.2d 984 (N.D. Cal. 2008), is unpersuasive as it does not involve a motion to compel.  Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)(iii) the Court finds that ordering this requested discovery is not warranted.

### G.  Production of the Entire Claims File

As discussed at oral argument, Defendant shall produce unredacted copies of the August 4, 2011 claim notes as such notes are not privileged. *See Stephan*, 2012 WL 3983767 at *11-13*.  Defendant shall also search again for all documents related to the Special Investigation Unit's "proactive" review of Plaintiff's claim and acceptance of the claim for investigation.  It does not make any sense that there are no documents or emails evidencing the proactive

5

1  review and acceptance for investigation. With respect to any recorded telephone calls, the
2  parties shall meet and confer and Plaintiff shall identify which particular call recordings she is
3  seeking.

### H.  Request for Leave to Depose Six Witnesses

Plaintiff requests leave to take the depositions of the following witnesses: Hartford claims adjusters Bryan Lowry and Laurie Tubbs, Hartford's Rule 30(b)(6) witness and peer reviewers Drs. Ricker, Jay and Peck. (Dkt. No. 22 at 29.) The Court DENIES without prejudice Plaintiff's motion for leave to depose witnesses in light of the upcoming production of documents as set forth in this Order. If after receipt of this additional evidence Plaintiff believes depositions are still warranted, Plaintiff shall meet and confer with Defendant. The Court will only order depositions upon a particularized showing of need, non-cumulative relevance, and proportionality.

### I.  A Protective Order

The Court will issue the standard protective order promulgated by the Northern District of California to govern this action.

### CONCLUSION

As suggested by the parties at oral argument, the parties shall meet and confer and submit a stipulation to this Court regarding the schedule for Defendant's production of documents and information as set forth in this Order. Such stipulation shall be filed on or before September 28, 2012. This Order also requires the parties to meet and confer about a number of issues. If resolution cannot be reached, the parties shall submit a joint discovery letter as required by this Court's standing order. Before the discovery letter shall be submitted, however, the parties must meet and confer in person in the Northern District since the case is pending here and the joint letter shall identify the date and participants in the meeting.

**IT IS SO ORDERED.**

Dated:  September 25, 2012

_Jacqueline S. Corley_
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE